986 S.W.2d 632 (1998)
GENERAL MOTORS ACCEPTANCE CORPORATION/CRENSHAW, DUPREE & MILAM, L.L.P., Appellant,
v.
CRENSHAW, DUPREE & MILAM, L.L.P./GENERAL MOTORS ACCEPTANCE CORPORATION, Appellee.
No. 08-96-00411-CV.
Court of Appeals of Texas, El Paso.
September 17, 1998.
Rehearing Overruled December 2, 1998.
*633 Carlos Villa, Villa & Keith, L.L.P., El Paso, Patricia D. Pope, McGinnis, Lochridge & Kilgore, L.L.P., Austin, for Appellant.
John C. Steinberger, Dudley Dudley Windle & Stevens, El Paso, Charles T. Frazier, Cowles & Thompson, P.C., Dallas, for State.
Before Panel No. 4 BARAJAS, C.J., and LARSEN and McCLURE, JJ.

OPINION
BARAJAS, Chief Justice.
This is an appeal from a summary judgment granted in favor of Appellee Crenshaw, Dupree & Milam, L.L.P. ("CD & M"). For the reasons stated below, we reverse the judgment of the trial court.

I. SUMMARY OF THE EVIDENCE

A. Procedural History
This appeal arises from a fraud and legal malpractice claim against Appellant General Motors Acceptance Corporation ("GMAC") and CD & M. GMAC and CD & M were sued by Gordon Rose, Jean Rose, Robert Rose, Dayonne Rose, Modern Chevrolet, Inc., and Modern Hyundai, Inc., ("the Roses") for numerous common law tort causes of action and violations of the DTPA. On November 10, 1995, the Roses entered into a settlement agreement with Appellant. The trial court dismissed the Roses' claims against Appellant with prejudice on November 23, 1995. On January 9, 1996, the Roses settled their claims with CD & M. The trial court dismissed the Roses' claims against CD & M with prejudice on January 12, 1996.
On August 25, 1995, Appellant filed its Original Cross-Claim against CD & M seeking actual damages and indemnification and/or contribution. On December 14, 1995, CD & M filed a Motion for Partial Summary Judgment alleging that Appellant's cross-claim was barred by limitations. On January 26, 1996, CD & M filed its First Amended Counter-Claim against Appellant seeking indemnity and attorney's fees.[1] On February 9, 1996, CD & M filed its Second Motion for Summary Judgment alleging that Appellant's cross-claim was not an independent cause of action, that no privity existed between CD & M and Appellant when it obtained the waiver from the Roses, that Appellant was not entitled to contribution as a matter of law because the Roses' claims had been settled, and that Appellant was not entitled to common law indemnity. Appellant filed its response on March 4, 1996. On March 5, 1996, Appellant filed its Third Amended Original Cross-Claim seeking actual damages, pre- and post-judgment interest, attorney's fees, and court costs, thereby dropping the language of contribution and indemnity. The parties filed various objections to certain portions of the summary judgment evidence and these motions were set for hearings on January 8, March 13, and August 20, 1996. Appellant filed an Amended Motion for Summary Judgment on September 19, 1996, asserting that CD & M's cross-claim failed to state a claim upon which relief could be granted. CD & M filed its response on September 20, 1996.
The trial court denied the objections to the summary judgment evidence. It then entered Final Judgment on September 20, 1996, in which it denied CD & M's Motion for *634 Partial Summary Judgment on limitations, granted CD & M's Second Motion for Summary Judgment, and granted Appellant's Amended Motion for Summary Judgment, ruling that the parties take nothing against each other.

B. Factual History
In the latter part of 1989, the Roses were approached by Appellant with a proposal that they should acquire a Hyundai dealership in Lubbock, Texas, which was then owned by Eddie Horn. Appellant arranged for a meeting between the Roses and Horn and representatives of each of their dealerships. As a result of these meetings, the Roses entered into an Undertaking and Indemnity Agreement with Horn, whereby the Roses' Modern Chevrolet took over the management of the Hyundai dealership. Appellant committed to the Roses that it would make a loan for them to purchase the Hyundai dealership. The purchase of the dealership could not be consummated until the GMAC loan was finalized and loan proceeds disbursed. The Undertaking and Indemnity Agreement, however, made the Roses responsible for all liabilities of the Hyundai dealership from and after March 1, 1990. Appellant was aware of this and also knew that Hyundai would not ship any new cars for the Roses to sell until the Roses had acquired the dealership, and that the acquisition was dependent on the closing of the GMAC loan.
In March of 1990, the Roses completed the loan applications for the Hyundai dealership. Accompanying the loan application was a forecast of operations of a Hyundai dealership which was prepared by Ronnie Bradshaw of GMAC and was presented to the Roses with the intent that they rely upon those projections. Although the Roses were assured that their loan applications would be approved, the March application was never approved and no disbursement was made based upon those applications. In June of 1990, a second loan application was completed, and was again accompanied by a forecast of operations for Hyundai, as well as a forecast of operations for Modern Chevrolet, both of which were prepared by Ronnie Bradshaw. These forecasts were prepared with the intent that they be relied upon and utilized by the Roses.
The loan proceeds were not disbursed until August 31, 1990. At that time, the Roses received $500,000, with only $88,372 designated for working capital, a figure far less than that previously promised by Appellant and utilized in the forecasts. Appellant never adjusted the financial forecast to reflect the reduction in the working capital portion of the loan and never advised the Roses of the effect of the reduction, which was to reduce the cash flow to the dealership under the projections from a positive figure to a negative figure, thus guaranteeing under Appellant's projections that additional sources of cash would be required to Hyundai over the period covered by the forecast.
At all times pertinent hereto, Appellant was aware of and had full knowledge of the financial condition of the Roses as well as the financial condition of Horn and the Hyundai dealership. Prior to the loan to the Hyundai dealership, the Roses had considerable borrowing power and a considerable net worth. However, Appellant required the Roses to pledge as collateral the assignment of all rents of the Modern Chevrolet dealership and of Horn Hyundai, and also took second and third mortgages on the Modern Chevrolet land and buildings on which it already had a first mortgage. This left the Roses with little borrowing power and gave Appellant far more collateral than it had previously or that it reasonably needed to secure the loan.
Between March and August of 1990, the Roses received only $50,000 in working capital loans from Appellant to operate the Hyundai dealership. That amount was insufficient and the Roses were forced to divert personal funds, as well as funds of Modern Chevrolet, to the Hyundai dealership to keep it operating. The Roses diverted those funds because of their continued reliance on Appellant's representations that a loan disbursement, including additional funds, would be forthcoming.
When the time came to close the loan on the Hyundai dealership in August of 1990, the Roses were faced with the proposition of either trusting Appellant's promises and projections and attempting to make the Hyundai *635 dealership a successful one, or refusing to close the loan, and losing all of the funds they had already diverted to the Hyundai dealership. They chose to rely upon what they later learned were the wrongful and misleading representations of Appellant. The drain of funds by the Hyundai dealership from Modern Chevrolet ultimately proved to be fatal for both dealerships. Had the Roses not been forced to divert funds and had they not granted additional collateral to Appellant, Modern Chevrolet could have been salvaged. Instead, Modern Chevrolet was sold at a loss and both Modern Chevrolet and the Roses were forced into bankruptcy.
At all times pertinent hereto, the Roses were represented by Appellee, CD & M. The firm also represented Appellant. Thus, at the closing of the loan, CD & M was representing persons with conflicting interests. CD & M obtained a Waiver of a Conflict of Interest signed by the Roses. However, the Roses contended that the waiver was ineffective because it was never explained to them, they were never given the opportunity to obtain other counsel, and CD & M never explained to the Roses how the judgment of CD & M might be adversely affected by their representation of Appellant. The Roses contended that CD & M breached its duty of loyalty when it concurrently represented Appellant, despite the clear conflict of interest. The Roses also argued that CD & M, who had represented them for over thirty years, breached its duties of honesty and fidelity.

II. DISCUSSION

Appellant brings eight points of error attacking the granting of summary judgment. We begin with a discussion of the traditional standard of review.

A. Standard of Review
The standard of review on appeal is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that a judgment should be granted as a matter of law. Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex.1991); Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548 (Tex. 1985); Cortez v. Liberty Mut. Fire Ins. Co., 885 S.W.2d 466, 469 (Tex.App.El Paso 1994, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. Gibbs v. General Motors, 450 S.W.2d 827, 828 (Tex.1970).
In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. Nixon, 690 S.W.2d at 548-49; DeLuna v. Guynes Printing Co., 884 S.W.2d 206, 208 (Tex.App.El Paso 1994, writ denied). Where the defendants are the movants and they submit summary evidence disproving at least one essential element of each of plaintiff's causes of action, then summary judgment should be granted. Perez, 819 S.W.2d at 471; Bradley v. Quality Serv. Tank Lines, 659 S.W.2d 33, 34 (Tex.1983); Cortez, 885 S.W.2d at 469. When, as here, both parties move for summary judgment, each party must carry their own burden as movant, and we consider all of the summary judgment proof accompanying both motions. See City of Houston v. McDonald, 946 S.W.2d 419, 420 (Tex.App.Houston [14th Dist.] 1997, writ denied) (citing International Ass'n of Fire Fighters v. City of Baytown, 837 S.W.2d 783, 786 (Tex.App.Houston [1st Dist.] 1992, writ denied); Dae Won Choe v. Chancellor, Inc., 823 S.W.2d 740, 742 (Tex. App.Dallas 1992, no writ)). On appeal, all reasonable inferences will be indulged, and all doubts will be resolved in favor of the losing party. University of Tex. Health Science Ctr. v. Big Train Carpet, Inc., 739 S.W.2d 792, 792 (Tex.1987).

B. Legal Duty
In Point of Error No. One, Appellant urges that the trial court erred by granting Appellee's Motion for Summary Judgment. In Point of Error No. Two, Appellant argues that the granting of the Motion for Summary *636 Judgment was error because Appellee had a legal duty to follow the instructions of Appellant.
In an action for legal malpractice, the plaintiff must prove a duty owed to him by the defendant, a breach of that duty, injury proximately caused by the breach, and damages. Peeler v. Hughes & Luce, 909 S.W.2d 494, 496 (Tex.1995). The existence of a legal duty is a question of law for the court to decide from the facts surrounding the occurrence. See City of McAllen v. De La Garza, 898 S.W.2d 809, 810 (Tex.1995); Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex.1990). Furthermore, we review determinations of legal questions on a de novo basis. In re Humphreys, 880 S.W.2d 402, 404 (Tex.1994); Texas Dep't of Pub. Safety v. Valdez, 956 S.W.2d 767, 769 (Tex.App.San Antonio 1997, no pet.).
An attorney may be liable for negligence in several situations, among those, in giving an erroneous opinion or advice, in failing to give advice or opinion when legally obligated to do so, in disobeying a client's lawful instructions, in taking action when instructed not to do so, in delaying or failing to handle matters when entrusted to do so, or in failing to use ordinary care in litigation. Zidell v. Bird, 692 S.W.2d 550, 553 (Tex. App.Austin 1985, no writ). The issue here is whether CD & M was legally obligated to obtain a valid conflicts waiver from the Roses.
It is well-established that an attorney-client relationship is an agent-principal relationship. Gavenda v. Strata Energy, Inc., 705 S.W.2d 690, 693 (Tex.1986). Inherent in any agency relationship is the fiduciary duty an agent owes to his or her principal. Maryland Ins. Co. v. Head Indus. Coatings and Servs., Inc., 906 S.W.2d 218, 233 (Tex. App.Texarkana 1995), rev'd on other grounds, 938 S.W.2d 27 (Tex.1996); Republic Bankers Life Ins. Co. v. Wood, 792 S.W.2d 768, 778 (Tex.App.Fort Worth 1990, writ denied). These duties include a duty of good faith and fair dealing. Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509, 512 (Tex.1942). The fiduciary relationship exists between attorneys and clients as a matter of law. See Cooper v. Lee, 75 Tex. 114, 12 S.W. 483, 486 (1889). Furthermore, an agent must obey the lawful directions of its principal. Albright v. Lay, 474 S.W.2d 287, 291 (Tex.Civ.App.Corpus Christi 1971, no writ); RESTATEMENT (SECOND) OF AGENCY § 385 (1957).
It is undisputed that CD & M represented Appellant, thus an agent-principal relationship existed. The record before this Court demonstrates that Appellant instructed its attorneys at CD & M to obtain a waiver from the Roses. In doing so, Appellant anticipated the conflicts waiver would be a valid and enforceable one, thus protecting it from any lawsuits resulting from the dual representation. By failing to obtain a valid waiver, CD & M failed to follow the lawful instructions of its principal and thereby exposed Appellant to liability. Appellant's Points of Error Nos. One and Two are sustained.
Having sustained Appellant's Points of Error Nos. One and Two, we find it unnecessary to address any remaining points of error. We reverse and remand the cause to the trial court.
NOTES
[1] CD & M erroneously labeled its cross-claim as a "counterclaim." For the purpose of this opinion, we will label it correctly, as a cross-claim.