**In re Dean S. HOOVER, Debtor.**

**Donald L. Hooker, et al., Plaintiffs,**

**v.**

**Dean S. Hoover, Defendant.**

**Bankruptcy No. 00–52334.
Adversary No. 00–5197.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Feb. 24, 2003.

---

David O. Simon, Cleveland, OH, for Debtor.

Marc P. Gertz, Akron, Oh, trustee.

### ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

MARILYN SHEA–STONUM, Bankruptcy Judge.

This matter is before the Court on the Motion for Summary Judgment (the "Motion") filed by the plaintiffs Donald L. Hooker, LeQuita Hooker Holmes, Anita Hooker McCrorey, and David Weldon Burton, Individually and as Next Friend of Allen Dale Burton (the "Plaintiffs"), filed on November 1, 2002 [Docket # 19], and the Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, filed by the debtor/defendant (the "Defendant") on December 16, 2002 [Docket # 24].

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July

16, 1984. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b).

## I. UNDISPUTED FACTS [1]

1. On October 7, 1991, a fire occurred at 918 West Seventh Street, Dallas, Texas, in a dwelling owned by the Federal Deposit Insurance Corporation ("FDIC") and managed by C.W. Sparks.

2. The fire resulted in the deaths of Karen Elaine Burton, Jennifer Marie Burton, David Wayne Burton, Jewell Frances Carter, Lester Doyle Carter, and Leslie Earl Carter.

3. Surviving as heirs (the "Heirs") were David Weldon Burton, Allen Dale Burton, Thomas Albert Glover, Zell Marie Glover, Lester Wayne Carter, Linda Joan Bower, Brenda Joyce Lindsey, Donald L. Hooker, Anita Hooker McCrorey, LeQuita Ann Holmes, Celita Jane Perry and Mary Ellen Kirby.

4. Heirs David Weldon Burton, Individually and as Next Friend of Allen Dale Burton, contracted with the Defendant to employ his services for 40% of all money or property collected from the FDIC. Heirs Donald L. Hooker, Anita Hooker McCrorey and LeQuita Hooker Holmes contracted with the Defendant to employ his services for 33% of all money or property collected from the FDIC.

5. On or about December 30, 1993, the Plaintiffs' claims against the FDIC and the United States were settled.

6. The proceeds of the FDIC settlement, both the cash payment to Defendant and the payment from Maryland Casualty Insurance Company, totaled $3,150,000.00.

7. The Defendant received a cash payment on the settlement of $1,664,038.00 payable in two installments, the first on December 31, 1993, and the second on January 3, 1994.

8. At the time of the settlement the Plaintiffs received the right to periodic payments over a 30 year period by annuity purchased from Transamerica Occidental Life Insurance Co.

9. The total amount received from Maryland Casualty Insurance Company and/or the FDIC as consideration for the purchase of the annuity was $1,485,962.00.

10. The total recovery on the settlement in the case was $3,150,000.00. Forty percent of this amount is $1,260,000.00. The Defendant's fee as charged and received was $1,664,038.00.

11. On or about January 12, 1994, a demand was made on the Defendant to return the overcharged fees which the Defendant refused.

12. On May 17, 1995, the Plaintiffs filed their Complaint against the Defendant which included allegations of Violation of Texas Disciplinary Rule 1.04(d), Breach of Contract, Breach of Fiduciary Duty, Fraud and Constructive Fraud, Fraud by Omission of Material Fact, and demands for an Accounting and Punitive Damages.

13. The case was captioned *Hooker, et al. v. Hoover, et al.,* Case No. 95–04831–C (District Court, Dallas

---

1. The parties stipulated on November 1, 2002 that all of the Plaintiffs' exhibits filed with the Motion for Summary Judgment were authentic.

County, Texas), with a Jury Demand.

14. On December 18, 1995, Defendant filed his original Answer also with a Jury Demand which was amended multiple times.

15. On January 16, 1996, Defendant filed a Counterclaim and Cross–Action.

16. The pleadings together with the trial testimony transcript in the case are thousands of pages in length and were amassed over four and one-half years.

17. On May 3, 1999, the Texas trial court judge entered Findings of Fact and Conclusions of Law in Support of the Plaintiffs' Motion for Default Judgment on Liability stating that the "Court finds that Mr. Hoover has shown contempt and disregard for the rules of discovery, the Orders of the Court and the practice of law before the Court that has been calculated to obstruct discovery and the timely trial of this cause and justifies the granting of a default judgment on liability. Alternative lesser sanctions would not be adequate or appropriate since they have been tried without success ... Plaintiffs have been irrevocably harmed in their ability to prosecute their claim and assert their defenses to the Defendants'[2] Counterclaims because of the Defendants dilatory and abusive discovery tactics. For all these reasons the Court is of the view that the Plaintiffs' Motion for Default Judgment on Liability should by granted to Plaintiffs and

trial should be heard on damages ... before a jury." Bates # 2472.

18. The Defendant filed a voluntary chapter 11 bankruptcy petition in Akron, Ohio on Friday, October 22, 1999 in the name of his company, Dean S. Hoover, P.C., d/b/a Hoover & Associates and Hoover Legal Associates (the "P.C.").

19. The Defendant filed a Notice of Bankruptcy in the District Court in Dallas on Monday, October 25, 1999 stating that "the Court has entered its order for relief as set forth on Exhibit 'A' attached hereto imposing an automatic stay on these proceedings," Bates # 2478, and contended that he left a "recorded telephone message" the same day for the Texas trial court Administrator asserting that the entire case was stayed due to the bankruptcy petition. Motion to Vacate Judgment or, in the Alternative, for New Trial and Request for Telephonic Hearing (the "Motion to Vacate Judgment"). Bates # 2489.

20. The Texas trial court entered an Order of Dismissal (Subject to Reinstatement) on Tuesday, October 26, 1999, Bates # 2480, stating that the court had received notification of the chapter 11 bankruptcy petition and that the right to re-open the case without prejudice continued for ninety days after the bankruptcy proceedings were concluded.

21. On October 26, 1999, the Plaintiffs moved to sever their claims against the P.C. from their claims against Hoover individually. The trial court granted the Motion the same day. Bates # 2481.

---

**2.** In their Original Petition the Plaintiffs named Dean S. Hoover individually and his law firm, d/b/a Hoover & Associates. The law firm was later severed from the Complaint after a bankruptcy petition was filed in its name.

22. The Plaintiffs waived a jury and on October 26, 1999 the case proceeded to trial. Following prior notice to all parties of the trial date and time, the trial court judge heard evidence presented in support of the Plaintiffs causes of action and damages against the Defendant. Neither the Defendant nor anyone on his behalf appeared at the trial to cross-examine any witnesses or present any evidence on his counter claim or cross-action, or present any defenses on his behalf.

23. Nine persons appeared to testify as witnesses and three witnesses appeared by deposition.

24. On October 27, 1999, after hearing the evidence, the court issued its judgment which held in pertinent part, Bates # 2485–88:

 a. Defendant Dean S. Hoover, individually, intentionally and fraudulently misrepresented to the Plaintiffs that the case of *Glover v. FDIC* settled for $4,300,000.00, when it settled for $3,150,000.00.

 b. Defendant Dean S. Hoover, individually, intentionally converted Plaintiffs' funds by charging attorney's fees to all of the clients he represented in *Glover v. FDIC* the amount of $1,500,000.00, which computes to a rate of 47.6% when the contracts with the Plaintiffs, Donald L. Hooker, Anita Hooker McCrorey and LeQuita Hooker Holmes, specified a rate of 33–1/3% and the contract with David and Allen Dale Burton specified a 40% rate.

 c. Defendant Dean S. Hoover, individually, intentionally failed to provide Plaintiffs with a proper accounting in writing of his fees and expenses.

 d. That in charging excessive fees, failing to provide an accounting and misrepresenting the settlement value of *Glover v. FDIC*, the Defendant Dean S. Hoover, individually, committed fraud, breach of fiduciary duty, breach of contract and knowingly violated the Texas Deceptive Trade Practices Act.

 e. That when Plaintiffs demanded an accounting and refund of excessive fees, Defendant Dean S. Hoover, individually, intentionally caused the Plaintiffs Donald L. Hooker, Anita Hooker McCrorey and LeQuita Hooker Holmes, to be wrongfully arrested and indicted on felony perjury charges. Defendant Dean S. Hoover, individually, proximately caused these Plaintiffs to be maliciously prosecuted on felony perjury charges based upon affidavits prepared by Hoover which he knew were false, and subsequently by knowingly providing false material evidence to Assistant District Attorney Dahill who would not have sought indictment of the Plaintiffs from the grand jury if Mr. Hoover had not provided him with false material evidence. These prosecutions were without probable cause, have terminated in Plaintiffs' favor and Plaintiffs are innocent of the criminal charges.

 f. Plaintiffs have proven more than a preponderance of credible evidence to entitle them to a recovery of actual and multiple damages, punitive damages, attorney's fees and pre and post judgment interest based on all pleaded causes of action against Defendant Dean S. Hoover, individually. These causes of action include breach of

contract, conversion, fraud, breach of fiduciary duty, intentional infliction of emotional distress, malicious prosecution and knowing violations of the Texas Deceptive Trade Practices Act, 4 Texas Business & Commercial Code § 17.46b(5)(7)(23) and § 17.50a(1) and a(3) and actual malice.

25. In its Judgment the court also granted the Plaintiffs a money judgment against the Defendant in the principal amount of $2,764,309.56, plus interest accruing on that amount at the rate of 10% per annum from October 27, 1999, which remains unsatisfied.

26. On November 29, 1999, the Defendant filed his Motion to Vacate Judgment.

27. On December 20, 1999, the District Court granted the Defendant's Motion to Appear Telephonically and heard Defendant's Motion to Vacate Judgment which was thereafter denied.

28. The Defendant appealed and on July 9, 2002, after the bankruptcy court lifted the stay,[3] the Court of Appeals for the Fifth District of Texas issued its opinion affirming, in all aspects, the Final Judgment of the District Court.

29. On May 15, 2000, Plaintiffs filed a copy of the Final Judgment, authenticated in accordance with 28 U.S.C. § 1738, with the Clerk of Summit County Court of Common Pleas in accordance with Ohio Rev. Code § 2329.022

## II. STANDARD FOR SUMMARY JUDGMENT

A court shall grant a party's Motion for Summary Judgment "if ... there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Fed. R. Bankr.P. 7056. The party moving for summary judgment bears the initial burden of showing the court that there is an absence of a genuine dispute over any material fact, *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), and, upon review, all facts and inferences must be viewed in the light most favorable to the nonmoving party. *Searcy* at 285; *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991).

## III. ISSUE

At issue in this case is whether under the full faith and credit statute the Texas state court action should constitute collateral estoppel as to the issues decided by the Texas court. Following that analysis the Court considers the issue of the dischargeability of the judgment entered by the Texas court pursuant to § 523(a)(4) and (a)(6) of the Bankruptcy Code.

## IV. ANALYSIS

### A. Full Faith and Credit

■ Inquiry into the preclusive effect of a state court judgment is guided by the full faith and credit statute which provides that the "judicial proceedings of any court of any ... state ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the court of such states ... from which they are taken." 28 U.S.C. § 1738. *See also Rally Hill Productions, Inc. v. Bursack (In re Bursack),* 65 F.3d 51, 53 (6th Cir.1995), citing *Migra v. War-*

---

3. The Defendant had filed his individual chapter 7 petition on August 1, 2000.

ren City School Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); Bay Area Factors v. Calvert (In re Calvert), 105 F.3d 315, 317 (6th Cir.1997); Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). As the Supreme Court noted in Marrese:

> This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered. "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."

Marrese at 380, 105 S.Ct. 1327 (quoting Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)). In Kremer the Court also held that " § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgment." Id. In this case, the judgment at issue was entered by a Texas State court. Accordingly, this Court must look to Texas substantive law to determine whether the default judgment should have any preclusive effect in this adversary proceeding.

### B. Texas Requirements for Collateral Estoppel

■ Collateral estoppel prevents a party from relitigating an issue that it previously litigated and lost.[4] Quinney Elec. Inc. v. Kondos Entertainment, Inc.,

988 S.W.2d 212, 213 (Tex.1999). See also In re Harper, 117 B.R. 306 (Bankr. N.D.Ohio 1990)(where all requirements of collateral estoppel are met, collateral estoppel should preclude relitigation of factual issues). It is generally applied when the issue was fully and fairly litigated in the previous action and was essential to the judgment in the previous action. Id. The elements of collateral estoppel or issue preclusion in the Texas courts are: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. Eagle Properties, Ltd. v. Scharbauer, 807 S.W.2d 714, 721 (Tex. 1990). In addition, the issue decided in the prior action must be identical to the issue in the pending action. State & County Mut. Fire Ins. Co. v. Miller, 52 S.W.3d 693, 696 (Tex.2001). Collateral estoppel further requires a final judgment. Frost Nat'l Bank v. Burge, 29 S.W.3d 580, 595 (Tex.App.—Houston 14th Dist.2000).

■ The facts at issue in this case were essential to the judgment of the state court and the parties were certainly adversaries in the action, meeting the second and third prongs of the Eagle Properties test.

Regarding the first prong of the Eagle Properties test, in its Judgment entered on October 27, 1999, the Court stated that "Although the Plaintiffs appeared in person and through their counsel and announced ready for trial the Defendant, Dean S. Hoover, individually although having been duly notified of the date and time

---

4. The Defendant does not contend that he had no notice of the trial. He filed an Answer, amended it several times, and was aware of the trial date and time. The Friday before the scheduled Tuesday trial he filed a chapter 11 bankruptcy for his legal association, but not for himself, and on the Monday before trial called the Texas court to inform them that the trial was "stayed." However, the Plaintiffs filed a Motion to sever the case from the Defendant's business, which was served on the Defendant and was granted. The trial proceeded against the Defendant individually.

of the trial failed to answer or appear and a judgment was granted in favor of the Plaintiffs against Defendant Dean S. Hoover, individually." Judgment, Bates # 2485. The Plaintiffs waived a jury on the day of trial, and the trial proceeded. At the trial the judge heard the live testimony of nine witnesses and the deposition testimony of three witnesses. Following the testimony the judge ruled in favor of the Plaintiffs. Judgment was entered on October 27, 1999. The Defendant did not participate in the trial nor did he present any evidence to refute the testimony of the twelve witnesses or present any evidence concerning his defenses or his counter claim or cross action.

The Defendant filed a Motion to Vacate Judgment, or in the Alternative, for a New Trial and Request for Telephonic Hearing (the "Motion to Vacate Judgment") on November 29, 1999. In his Motion the Defendant contended that filing a business chapter 11 was sufficient for the stay to apply to him individually, and that even if it was not sufficient to shield him from trial, he had believed that it was sufficient and for that reason, as well as "economic" reasons, had not appeared at the trial. That portion of the Motion requesting a telephonic hearing was granted and the Texas court held a hearing on the Motion to Vacate Judgment on December 20, 1999. The Motion to Vacate Judgment was denied, the Judgment was not vacated and no new trial was held. The Court of Appeals affirmed the trial court on all issues. On these facts the first prong of the *Eagle Properties* test has also been met. There is no contention by any of the parties that the issues decided in the Texas action are not identical to the issues pending in this adversary proceeding. The Texas court issued a final Judgment and, thus, all of the elements necessary for collateral estoppel to apply in Texas have been met.

The Defendant contends that the Texas court would not apply collateral estoppel because a default "prove-up" does not meet the required standards. The Texas courts disagree. The Texas Supreme Court has held that "judgment where a defendant has answered but fails to appear for trial" is a "post-answer 'default' judgment" and the "plaintiff ...must offer evidence and prove his case as in a judgment upon a trial." *Stoner v. Thompson*, 578 S.W.2d 679, 682–83 (Tex.1979). *See also Green v. McAdams*, 857 S.W.2d 816, 818 (Tex.App.1993)("At the hearing on the post-answer default, the plaintiff must carry his burden to prove the elements of his action."). "According to Texas law the issues were properly raised and actually litigated; accordingly we find they were fully and fairly litigated for collateral estoppel purposes." *Garner v. Lehrer (In re Garner)*, 56 F.3d 677, 680 (5th Cir.1995)(abrogated on other grounds).

The Defendant further contends that Texas would refuse to apply collateral estoppel because the state court lacked subject matter jurisdiction over the attorney fees and expenses awarded to his law firm by the Federal District Court. In his Memorandum Opinion and Order, entered December 11, 1995, Bates # 1043–52, Judge Barefoot Sanders wrote:

> This case has a long and bitter history.... Plaintiffs filed a federal Complaint January 31, 1994, alleging state causes of action as well as an action under the Federal Tort Claims Act ... contending that Hoover's fees violated the FTCA's fee cap provision. In April of 1995, this Court dismissed Plaintiffs' federal claim for lack of jurisdiction and remanded Plaintiffs' remaining state claims.... Defendant Hoover non-suited the state actions in April of 1995.

Plaintiffs filed their Original Petition in this action in the 134th District Court of Dallas County, Texas on May 17, 1995 . . . Defendant filed a Notice of Removal on July 10, 1995 alleging the federal jurisdiction existed pursuant to both diversity of citizenship and federal question jurisdiction.

. . .

In his zeal to find some basis for federal question jurisdiction in this case, Defendant erroneously characterizes Plaintiffs' current lawsuit as one "challenging the Final Judgment" issued by Judge Kendall in the *Glover v. FDIC* action. In actuality, Plaintiffs' lawsuit brings state law causes of action sounding in tort and breach of contract based upon various alleged breaches of duty by Defendant against Plaintiffs.

By mischaracterizing Plaintiffs' lawsuit, Defendant mistakenly contends that there is federal question jurisdiction in this case because "[t]he grounds and procedure for setting aside a federal judgment are entirely a matter of federal law, on which state law may be disregarded." [Citation omitted] Defendant has only cited one inapposite case in support of his contention that federal question jurisdiction exists in this case. That case addressed Fed.R.Civ.P. 60(b)

which describes the procedure for a motion for relief from judgment. No such motion has been made in the instant case. . . . Accordingly, there is no federal question jurisdiction.

Judge Sanders remanded the case to the District Court of Dallas County because he found no federal subject matter jurisdiction. Defendant's argument regarding federal subject matter jurisdiction is not well-taken.

The Defendant argues that "[u]nder Texas law, in order for issue preclusion or collateral estoppel to apply, there must be no special circumstances that would render preclusion inappropriate or unfair."[5] Memorandum in Opposition ("Mem. in Opp.") at 9. Although the Defendant contends that such "special circumstances" are "replete" in this case, *id.*, there is no showing of "special circumstances" under Texas law. The Defendant alleges that the "special circumstances" are, *inter alia,* that a bankruptcy petition had been filed before the trial, that his counterclaims were dismissed, and that "the default judgment would never have occurred but for the fact that Plaintiff's [sic] counsel filed a false certificate of service and never served Plaintiffs' motion to sever."[6] A

---

**5.** The Defendant argues "special circumstances" but does not cite any Texas state court cases that actually state what those circumstances might be under Texas law. Texas cases regarding this subject include, *inter alia,* the following cases. In *Universal American Barge Corp. v. J–Chem, Inc.,* 946 F.2d 1131 (5th Cir.1992), the Fifth Circuit, applying Texas law, held that "special circumstances" did not include that the issues had been arbitrated and not actually litigated. In *Antonini v. Harris Cty. Appraisal Dist.,* 999 S.W.2d 608, 612 (Tex.App.—Houston, 14th Dist.1999), the Court held that a "special circumstance" could exist when a case was on appeal. In *Cryer v. State of Texas,* Nos. 12–01–00287–CR to 12–01–00292–CR, 2002 WL 1429526 at *7 (Tex.Ct.App. June 28, 2002) the

Court addressed the issues of due process and due course of law. In *Hicks v. Quaker Oats Co.,* 662 F.2d 1158, 1166 (5th Cir.1981), the Court stated that *Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) stood for the proposition that collateral estoppel was applicable "even though the public contracts involved in the federal suit contained slightly different provisions than those in the first suit" and that no "special circumstances" were applicable. None of the circumstances that the Defendant lists are applicable to the Texas courts' concerns.

**6.** All of these "special circumstances" are of the Defendant's own making. There are no allegations that the court did not notify him of the trial date or that in some way the Plain-

petition had been filed, but it was a business chapter 11 and did not involve the Defendant individually. Presumably the Texas trial judge dismissed his counterclaims because he did not appear at trial to put on evidence concerning them. In his Motion to Vacate Judgment the Defendant made no allegation that the Motion to Sever attached a false Certificate of Service.

The Defendant also alleges that the evidence taken by the Texas trial judge may have been inadmissible because the Plaintiffs established their case of malicious prosecution based at least in part on the testimony of Assistant District Attorney John Dahill. The Defendant claims that his communications with District Attorney Dahill were "absolutely privileged." The Defendant cites to *Reagan v. Guardian Life Ins., Co.*, 140 Tex. 105, 166 S.W.2d 909 (Tex.1942) for the proposition that "[t]he law is well established that ordinarily no action for damages lies for a statement made in the course of a judicial proceeding though the language be false and published with express malice." *Reagan*, 166 S.W.2d at 912. Mem. in Opp. At 10 n. 7. *Reagan* was a libel action and the proposition that *Reagan* actually stands for is "[a]n absolutely privileged communication is one for which, by reason of the occasion upon which it was made, no remedy exists in civil action for libel or slander." *Reagan* at 912.

First, this is not an action for libel or slander. In addition, the Assistant District Attorney testified[7] at trial that he had been approached by the Defendant with information and the Defendant was "providing evidence that would support . . . seeking indictments against the plaintiffs." Dahill testified that Hoover did not provide any "legal protection for these clients or urge [him] not to seek indictments" and did not "assert any sort of attorney-client privilege with respect to any communications." The Defendant asserts that he is entitled to breach the attorney-client privilege concerning communications with his clients in order to give "evidence" to Dahill but that Dahill may not seek to tell the Court that "not only [was the Defendant] not candid with me, but he had in fact lied." Dahill further testified that he was "misled" and "used" by the Defendant and that as soon as he learned of the falsity of the Defendant's representations he voluntarily dismissed the indictments against the Defendant's clients.

The Defendant further contends that the Plaintiffs took "unfair advantage" of him because the Plaintiffs' expert witness testified that in his opinion the Defendant had violated the professional canons of ethics and that the fees awarded by the Federal District Court violated the criminal provisions of the Federal Tort Claims Act. As noted by the Texas trial court judge, the Defendant was not at the trial due to his own decision and thus was not present to object to the Plaintiffs' expert witness or cross-examine him. In addition, the Defendant alleges that the Plaintiffs' attorney gave unsworn testimony at the trial. The trial transcript clearly shows that the Plaintiffs' attorney, David W. Townend, was duly sworn and testified as to the fees he was charging the Plaintiffs.

Looking at the facts in the light most favorable to the Defendant, there appear

---

tiffs kept him from appearing, thereby denying him due process of law. In addition, the case was not on appeal, it was ripe for trial.

**7.** All of the trial testimony is contained a volume entitled "Default" and the testimony is not paginated. Exhibit B—Volume 2 of 5. In the Master Index, Exhibit B—Volume 1 of 5, Dahill's testimony is listed as starting on page 62.

to be no "special circumstances" sufficient under Texas law that would render collateral estoppel inappropriate or unfair.

 The Defendant also contends that since he demanded a jury in the Texas court action, a Texas court would not apply collateral estoppel because such application would violate his right to a jury trial under the Texas constitution. As noted by the Texas trial court judge the Defendant chose not to appear at the trial, despite notice of the date and time. A jury trial is not a right which cannot be waived. "Whether facts found by a judge in a prior proceeding have preclusive effect in Texas depends on whether the right to a jury trial was waived." *Trapnell v. Sysco Food Services, Inc.*, 850 S.W.2d 529, 546 (Tex.App.1993)(citing *San Jacinto Oil Co. v. Culberson*, 100 Tex. 462, 101 S.W. 197, 198–99 (1907)). The facts in this case establish waiver by the Plaintiffs who had also made a jury demand. Based on his decision not to appear at trial, the Defendant was not at the courthouse to object to the Plaintiffs' waiver of the jury demand. Again as noted by the Texas court judge, the Defendant chose not to attend the trial and to risk waiver of the jury demand and a judgment against him.

The record of this case from the Texas trial court demonstrates clearly that this case meets the standard for collateral estoppel as set forth under Texas law barring relitigation of the issues fully and fairly adjudicated by the Texas state court.

## C. Exceptions to Discharge

### 1. Collateral Estoppel and Discharge Exceptions

 The Supreme Court has clarified that "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct.

654, 112 L.Ed.2d 755 (1991). The Fifth Circuit, applying Texas law, has found that a similar outcome results from state court judgments. *Garner v. Lehrer (In re Garner)*, 56 F.3d 677, 681 (5th Cir.1995). In *Harold V. Simpson and Co. v. Shuler (In re Shuler)*, 722 F.2d 1253 (5th Cir.1984) the court stated:

> collateral estoppel—arising from an earlier nonbankruptcy suit's determination of subsidiary facts that were actually litigated and necessary to the decision— may properly be invoked by the bankruptcy court to bar relitigation of those issues even though the bankruptcy court retains the exclusive jurisdiction to determine the ultimate question of the dischargeability [of the debt] under federal bankruptcy law ... upon the facts so based and other evidence before the court.

*Shuler* at 1255; *see also Lacy v. Dorsey (In re Lacy)*, 947 F.2d 1276, 1277 (5th Cir.1991). "Simply put, when a state court, after a 'full and fair' adjudication, determines an issue, a bankruptcy court may give that determination collateral estoppel effect." *Garner*, 56 F.3d at 681.

### 2. 11 U.S.C. § 523(a)(4)

 The Complaint in this Adversary Proceeding, filed on November 21, 2000, states that the Plaintiffs, Donald L. Hooker, LeQuita Hooker Holmes, Anita Hooker McCrorey, and David Weldon Burton, Individually and as Next Friend of Allen Dale Burton, were all scheduled as Creditors Holding Unsecured Nonpriority Claims in the Defendant's chapter 7 bankruptcy case, filed on August 1, 2000. All of the Plaintiffs names appear on the caption of the Complaint. A certified copy of the Judgment of the Texas trial court was attached to the Complaint. All of the Plaintiffs names appear on the caption of the Judgment from the Texas court as Plaintiffs to that action. In their Com-

plaint the Plaintiffs quote ¶ 6 of the Judgment:

> Plaintiffs have proven more than a preponderance of credible evidence to entitle them to a recovery of actual and multiple damages, punitive damages, attorney's fees and pre and post judgment interest based on all pleaded causes of action against Defendant Dean S. Hoover, individually. These causes of action include breach of contract, conversion, fraud, breach of fiduciary duty, intentional infliction of emotional distress, malicious prosecution and knowing violations of the Texas Deceptive Trade Practices Act, 4 Texas Business & Commerce Code § 17.46b(5)(7)(23) and § 17.50a(1) and a(3) and actual malice.

In their Complaint the Plaintiffs contend that the judgment debt Defendant owes to them is nondischargeable under § 523(a)(4) as it "was incurred as a result of Defendant's committing fraud or defalcation while acting in a fiduciary capacity." Complaint at ¶ 8. The Defendant was, at the time of the pendency of this case, an attorney licensed to practice in Ohio and Texas.

 Section 523(a)(4) provides that a debt is nondischargeable if it is a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny ...." In addition to actually committing the act of fraud or defalcation, the debtor must also have been acting in a fiduciary capacity. *In re Kindrick*, 213 B.R. 504, 507 (Bankr.N.D.Ohio 1997). It is the Plaintiffs' burden to show by a preponderance of the evidence that the dischargeability exception is warranted. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)

The Supreme Court has held:

> It is not enough that by the very act of wrongdoing out of which the contested debt arose, the [debtor] has become

chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto ... "[t]he language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created."

*Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 79 L.Ed. 393 (1934)(quoting *Upshur v. Briscoe*, 138 U.S. 365, 378, 11 S.Ct. 313, 34 L.Ed. 931 (1891)). In an analysis of the predecessor of § 523(a)(4) the Sixth Circuit held that "[t]he question of who is a fiduciary for purposes of section 17(a)(4) is one of federal law, although state law is important in determining when a trust relationship exists." *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251 (6th Cir.1982).

 Under Texas law, "the relationship between an attorney and client is a fiduciary one and their dealings are subject to the same scrutiny as a trustee and a *cestui que* trust." *Avila v. Havana Painting Company, Inc.*, 761 S.W.2d 398, 400 (Tex.App.—Houston, 14th Dist.1988) (citing*Archer v. Griffith*, 390 S.W.2d 735, 739 (Tex.1965)). The Code of Professional Responsibility requires that an attorney promptly pay or deliver to the client all funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive. SUPREME COURT OF TEXAS, RULES GOVERNING THE STATE BAR OF TEXAS art. XII, sec. 8 (Code of Professional Responsibility) DR 9–102(B)(1973). In addition attorneys have a fiduciary relationship with their clients as a matter of law. *Gen. Motors Acceptance Corp. v. Crenshaw, Dupree & Milam, L.L.P.*, 986 S.W.2d 632, 636 (Tex. App.—El Paso, 1998).

Under Texas law the Defendant held the position of fiduciary vis a vis the Plaintiffs.

The Plaintiffs contended in Count V of their Complaint, and the Texas court held in its Judgment, that the Defendant had breached his fiduciary duty by converting the Plaintiffs funds to his own use, not rendering an accounting to them, and making misrepresentations as to the actual amount of the settlement.

"The term 'defalcation' is quite broad, intended to include innocent or negligent defaults in duty as well as intentional acts. It can be a mere deficit resulting from the Debtor's misconduct, even though he derived no personal gain." *Galbreath,* 112 B.R. at 900; *see also Carlisle Cashway,* 691 F.2d at 257(holding that "defalcation" should be measured by objective standards). The proven intentional acts of the Defendant represent a defalcation while acting in a fiduciary capacity which is sufficient to meet the requirements of § 523(a)(4). Under either Ohio or Texas law the Defendant committed a defalcation while acting in a fiduciary capacity which renders the debt excepted from discharge pursuant to § 523(a)(4).

Pursuant to the applicable law, the Plaintiffs' Exhibits and the findings of the Texas trial court and the Court of Appeals, the facts indicate actual fraud and defalcation while acting in a fiduciary capacity which causes of action have been fully adjudicated. Therefore the Judgment debt is excepted from discharge pursuant to § 523(a)(4).

### 3. § 523(a)(6)

Pursuant to § 523(a)(6) of the Code, debts created by a debtor's willful and malicious conduct are not dischargeable in bankruptcy. Neither "willful" or "malicious" is defined under the Code. However, the Sixth Circuit has held:

An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite, or ill-will. The word "willful" means "deliberate or intentional," a deliberate and intentional act which necessarily leads to injury.

*Perkins v. Scharffe,* 817 F.2d 392, 394 (6th Cir.1987). In order to except a debt from discharge as one for debtor's willful and malicious injury elements of the statutory exception to discharge must be demonstrated by a preponderance of the evidence. *In re Abbo* 192 B.R. 891, 896 (Bankr.N.D.Ohio 1996)(citing *Grogan,* 498 U.S. at 291, 111 S.Ct. 654).

The Texas trial court held in its Judgment that "[p]laintiffs have proven more than a preponderance of credible evidence to entitle them to a recovery ... [for] intentional infliction of emotional distress, [and] malicious prosecution ...." Judgment, Bates # 2486. In addition the Texas court held:

That when Plaintiffs demanded an accounting and refund of excessive fees, Defendant Dean S. Hoover, individually, intentionally caused the Plaintiffs, Donald L. Hooker, Anita Hooker McCrorey, and LeQuita Hooker Holmes, to be wrongfully arrested and indicted on felony perjury charges. Defendant Dean S. Hoover, individually, proximately caused these Plaintiffs to be maliciously prosecuted on felony perjury charges based upon affidavits prepared by Hoover which he knew were false, and subsequently by knowingly providing false material evidence to Assistant District Attorney Dahill who would not have sought indictments from the grand jury of the Plaintiffs if Mr. Hoover had not provided him with false material evidence. These prosecutions were without probable cause, have terminated in Plaintiffs' favor and Plaintiffs are innocent of the criminal charges.

**354**

At trial Donald Hooker, LeQuita Hooker Holmes and Anita McCrorey each testified that they were arrested; that they were formally booked on perjury charges and that they faced up to ten years in prison and up to a $10,000.00 fine each. Donald Hooker testified that he was afraid he would lose his job because of the charges. Anita McCrorey Holmes testified that she was actually jailed for six hours and was also fearful that she would lose her job. LeQuita Hooker Holmes was also jailed for six hours and had to take medication to handle the stress. Trial transcript, Exhibit B, Volume 2.

Pursuant to the applicable law, the evidence produced at trial, the Plaintiffs' exhibits and the findings of the Texas trial court and the Court of Appeals, the facts are undisputed that the Defendant caused willful and malicious injury, both in the form of intentional infliction of emotional distress and malicious prosecution, to the above-named Plaintiffs. Accordingly, the judgment debt owed to these Plaintiffs is excepted from discharge pursuant to § 523(a)(6).

## V. CONCLUSION

Based on the foregoing, the Defendant's debts owed to the Plaintiffs pursuant to the Judgment of the Texas trial court and the affirmation by the Court of Appeals are excepted from discharge under the provisions of § 523(a)(4) and § 523(a)(6) of the Bankruptcy Code.

Accordingly, Plaintiffs' Motion for Summary Judgment is GRANTED.