COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BUSINESS STAFFING, INC., HARRY SEWILL, BSI INSURANCE SERVICES, INC., BART BOGUS, TRASNGLOBAL MORTGAGE, INC., TRANSGLOBAL INDEMNITY LIMITED, LHR ENTERPRISES, INC., AND RICHARD GABLE CHAPMAN, | § § § § § § | No. 08-11-00092-CV |
| | | Appeal from the |
| Appellants, | § | 109th Judicial District Court |
| v. | § | of Andrews County, Texas |
| JACKSON HOT OIL SERVICE, D/B/A, JACKSON BROTHERS HOT OIL SERVICE, DELBERT JACKSON, TERRY JACKSON, AND CODY JACKSON, | § § § § | (TC# 17,301) |
| Appellee. | § | |

# **O P I N I O N**

The opinion and judgment dated May 23, 2012, are hereby withdrawn and the following opinion and judgment are substituted in their place.

Appellants Business Staffing, Inc. ("BSI"), its directors and several related entities[1] (collectively "Defendants") appeal a final judgment in favor of Jackson Hot Oil Service d/b/a Jackson Brothers Hot Oil Service ("Jackson Brothers"), brothers Delbert and Terry Jackson ("the Jacksons"), and Cody Jackson,[2] Terry's son and Delbert's nephew (collectively "Appellees").

---

[1] Transglobal Indemnity, Ltd., Harry Sewill, Richard Gable Chapman, Bart Bogus, BSI Insurance Services, Inc., Transglobal Mortgage, Inc., and LHR Enterprises.

[2] Cody Jackson joined the underlying lawsuit as a party-Plaintiff aligned with Jackson Brothers and, with few exceptions, Appellees filed their pleadings jointly on behalf of all Appellees.

Appellants bring eleven issues:   (1) error in the trial court's denial of Appellants' motion for judgment notwithstanding the verdict based on affirmative defenses; (2) legal and factual insufficiency of the evidence to support the jury award of Deceptive Trade Practices Act damages as to Appellee Cody Jackson; (3) legal and factual insufficiency of the evidence to support a finding that Appellants committed fraud as to Appellee Cody Jackson; (4) legal and factual insufficiency of the evidence to support the award of actual damages as to Appellee Cody Jackson; (5) legal and factual insufficiency of the evidence to support the award of exemplary damages as to Appellee Cody Jackson; (6) legal and factual insufficiency of the evidence to support the jury finding of fraud by BSI against Appellee Jackson Brothers; (7) legal and factual insufficiency of the evidence to support the jury award for actual damages as to Appellee Jackson Brothers; (8) legal and factual insufficiency of the evidence finding that breach of contract by Appellee Jackson Brothers was excused; (9) error by the court in failing to construe a 1999 contract because it was unambiguous; (10) error in granting Appellees' motion to introduce parol evidence; and (11) error in entering final judgment when Appellees failed to properly elect remedies.   For the reasons that follow, we reform the final judgment in part and affirm the judgment of the trial court, as modified.

## PROCEDURAL BACKGROUND

Appellees filed suit against Appellants in the District Court of Andrews County, alleging breach of contract, violations of the Texas Deceptive Trade Practices Act ("DTPA"), breach of the duty of good faith and fair dealing, and negligence.   Subsequent pleadings added claims for, *inter alia*, fraud, and violations of the Texas Insurance Code, as well as adding additional Defendants. A jury trial was conducted from August 23, 2010 through August 31, 2010.   Following the trial, the jury entered a multi-million dollar verdict against Appellants based on its findings that all

2

Appellants had engaged in unconscionable and deceptive acts and committed fraud which harmed

Appellee Cody Jackson. The jury found that only Appellant BSI committed fraud against

Jackson Brothers. The jury awarded Cody Jackson and Jackson Brothers actual and punitive

damages, and awarded BSI $112,000 for its breach of contract claim against Jackson Brothers.

The trial court rendered judgment on the verdict, and Appellants timely appeal.

## FACTUAL BACKGROUND

Appellant Transglobal Indemnity ("Transglobal") is an entity created in the 1990s by

Appellants Harry Sewill ("Sewill") and Richard Chapman ("Chapman"),[3] as the insurance

company that would provide workers' compensation for Appellant BSI, a staff leasing business,[4]

in order to go into the insurance business and hold onto the money which would normally have

been paid for premiums. Neither Sewill, Chapman, BSI, or Transglobal is licensed to conduct

insurance business in the State of Texas. Transglobal was set up to be headquartered in Turks and

Caicos in the Caribbean, but it maintains no office or employees there.[5] Transglobal issued a

single insurance policy to one insured, BSI, with an annual premium of $4,100 for coverage of up

to $1,000,000 per accident to cover all of BSI's 150 client companies' 2000 leased employees.

Appellant Transglobal Mortgage is a Texas corporation, run by Chapman and Sewill,

whose function is to act as a "lock-box" to receive money that the other Defendants charge client

companies, it is a subsidiary of Transglobal and has no employees of its own. BSI Insurance

Services, Inc. and Bart Bogus ("Bogus") issued certificates of insurance to BSI's customers,

---

[3] A third individual was also involved in the creation of Transglobal Indemnity but is no longer involved with that entity.

[4] BSI has either been a subscriber or a nonsubscriber to certified workers' compensation insurance since the early 1990's. The decision to either procure workers' compensation insurance through an admitted carrier or to provide an alternative benefits program was a business decision reserved by BSI based on current market conditions.

[5] At times, Transglobal Indemnity had no employees of its own.

representing that the customers had workers' compensation insurance coverage, though Bogus was not the insurance agent and did not procure or sell the purported Transglobal insurance. LHR is a holding company, one-third each owned by Chapman and Sewill, which is the holding company of Transglobal.

During the mid-1990s, BSI, by and through its employees, represented to Appellees Delbert and Terry Jackson that BSI would provide them workers' compensation insurance for Jackson Brothers, advised them that BSI would set up Jackson Brothers on the minimum payroll amount possible to get the insurance, and expressly advised the Jacksons to pay themselves, and later Cody Jackson, bonuses. BSI's employees represented to the Jacksons, who relied upon the representations, that BSI would acquire the necessary workers' compensation and handle both administrative and risk management tasks for Jackson Brothers under those terms. The Jacksons signed contracts drafted by BSI to provide staff leasing services.

In July 1999, Jackson Brothers and BSI entered into a written contract wherein BSI agreed to lease employees to Jackson Brothers (the "1999 Contract"). The 1999 contract provided that BSI, in addition to providing a number of other administrative services,[6] would be responsible for acquiring "workers' compensation insurance coverage and/or benefits," with such coverage only being available to BSI's employees and only for the period compensated by BSI. One of the clauses of the 1999 Contract was a default provision which provided that if Jackson Brothers made payments directly to one of its leased employees such an act would constitute a default resulting in

---

[6] BSI would, *inter alia*, fill out W-4 forms and I-9 forms, handle background investigations of employees, employee applications, customize safety manuals, implement drug and alcohol policies, deal with OSHA filings, take over all responsibilities regarding employee taxes and FICA including payroll responsibilities and check writing, track sick and vacation pay and benefit eligibility dates, perform job costing for payroll, handle certified payroll for government or school districts including wage garnishments, and acquisition of workers' compensation, and handle audits of workers' compensation.

the termination of the employment relationship between the leased employee and BSI.   After BSI and Jackson Brothers entered into the 1999 Contract, BSI exercised its right under the contract to either provide benefits, which it did in 2000 and 2001, or to procure workers' compensation insurance through an admitted insurance carrier, which it did in 2002 through Defendant Transglobal Indemnity.

Cody Jackson began working for Jackson Brothers in 1997, driving and operating a hot oil truck, as a leased employee of BSI.   An employment contract, under the same terms the Jacksons executed for their own individual employment contracts with BSI, was entered into advising Cody Jackson that he would be provided with workers' compensation benefits for injuries compensable under the Texas Workers' Compensation Act.

On March 2, 2005, Cody Jackson was burned in an on-the-job accident while performing contract work for Great Western Drilling Co. ("Great Western").[7]   Part of an oil field fire caused the hot oil truck Cody Jackson was driving to catch fire, and he suffered deep second- and third-degree burns on 65-70 percent of his body, incurring $1,016,000 in medical costs for treatment by Texas Tech University Health Sciences Center ("TTUHSC") and the University Medical Center Hospital ("UMCH") burn unit.   Following eighteen or more surgeries and seventy-seven days of intensive burn unit care, Cody Jackson was released to rehabilitation therapy and home treatment, incurring additional medical expenses.   Appellants paid approximately $13,000 of incidental medical bills until December 6, 2006, but as of that date had neither paid nor denied any of the $1,016,000 owed to TTUHSC and UMCH.   A BSI employee, Jessica Reid, had Jackson Brothers provide information on a "Texas Workers' Compensation Commission Employer's First Report of Injury" form for Cody Jackson as an employee of BSI.

---

[7] The accident occurred at a well where Jackson Brothers had been contracted by Great Western to remove hot oil.

Appellants paid a weekly temporary benefit to Cody Jackson for eighteen months after the accident. Counsel for Cody Jackson made demand on Chapman and BSI on December 5, 2005 to have their workers' compensation carrier pay the TTUHSC bills and some of the UMCH bills. However Chapman, BSI, and Transglobal Indemnity never responded to this demand. Subsequently, Appellees commenced their various lawsuits against the Appellants.

R. Glen Miller ("Miller") is an employee of Transglobal, acting as "domestic operations officer" and handled claims for BSI's employees. Miller explained that Transglobal Indemnity did not promptly pay the TTUHSC and UMCH bills because they were too high and needed to be audited. An audit was completed on July 25, 2005, with a conclusion that a lesser amount be paid, however the claims at the audited amounts were not acted on for another year, and were not paid. Later, the claims were denied based on Miller determining that Cody Jackson was a "statutory employee" of Great Western at the time of the accident. However, at trial, an employee of Great Western, Larry Leavelle, testified that Cody Jackson was called to work as a contractor with Jackson Brothers and was not an employee of Great Western. Miller also denied the claims on the basis that he received a message from Great Western's insurance carrier asserting that Cody Jackson had made a claim as their employee, however this was a claim initiated by Chapman in 2008, following a deposition he gave in the underlying case. Chapman made this claim without Cody Jackson's authorization or Jackson Brothers' knowledge. Chapman testified that the benefit payments and payments for medical expenses ceased because BSI discovered that Cody Jackson ceased being an employee of BSI prior to the accident because Jackson Brothers breached the 1999 Contract by making direct bonus payments to Cody Jackson.

While Transglobal supposedly set a reserve for Cody Jackson's claim in the amount of

6

$1,300,000, Miller could not testify that there was ever, in fact, $1,000,000 in the account. Miller

testified that Transglobal was not an insurance company capable of paying the claim.

There is no document which indicates that BSI advised the Jacksons, Cody Jackson, or

Jackson Brothers that they did not have workers' compensation insurance coverage.

Following a jury trial, the jury found that all Appellants had engaged in unconscionable

and deceptive acts and committed fraud which harmed Appellee Cody Jackson. Appellants filed

several post-trial motions, including a motion for judgment notwithstanding the verdict ("JNOV"),

objecting to the form and contents of the proposed final judgment for failing to take account of

settlement credits and failing to properly elect remedies, as well as a motion for a new trial. The

final judgment contained minor changes made but was in substantial conformity with the one

proposed by Appellees. Ultimately, the motion for new trial was overruled by operation of law.

## DISCUSSION

Appellants raise eleven issues.

### I.      Denial of Motion for Judgment Notwithstanding the Verdict

Appellant's first issue alleges that the trial court erred by denying Appellants' JNOV based on

the affirmative defense of statute of limitations and other defenses.

We review the denial of a JNOV under a legal sufficiency standard. *Nottingham Manor*

*Owners Ass'n v. El Paso Elec. Co*., 260 S.W.3d 186, 192 (Tex.App.--El Paso 2008, no pet.), *citing*

*Richard Rosen, Inc. v. Mendivil,* 225 S.W.3d 181, 191 (Tex.App.--El Paso 2005, pet. denied). In

a legal sufficiency review, the court of appeals cannot substitute its judgment for that of the

trier-of-fact, so long as the evidence falls within the zone of reasonable disagreement. *City of*

*Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). "If the evidence at trial would enable

7

reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so." *Id.* We will sustain the legal-sufficiency challenge if the record reveals: (1) the complete absence of evidence supporting the finding; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to support the finding; (3) the evidence offered to prove the finding is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the finding. *Id*. at 810–11. More than a scintilla of evidence exists when the evidence presented rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). *See also Frontera Sanitation, L.L.C. v. Cervantes*, 342 S.W.3d 135, 139 (Tex.App.--El Paso 2011, no pet.)(same). The reviewing court must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it. *Keller*, 168 S.W. 3d at 822.

When the basis for a JNOV is the statute of limitations, the party asserting the affirmative defense of limitations has the burden to show from the record that suit is barred by limitations, and if pleaded by the plaintiff, show that the discovery rule does not apply. *Barber v. Crowson*, 2000 WL 1367968, *3 (Tex.App.--El Paso Sept. 21, 2000, no pet.), *citing Schindley v. Northeast Texas Community College*, 13 S.W.3d 62, 65 (Tex.App.--Texarkana 2000, pet. denied). A cause of action generally accrues at the time when facts come into existence authorizing a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc*., 800 S.W.2d 826, 828 (Tex. 1990). In Texas, a plaintiff's cause of action accrues, and the applicable limitations period starts to run, "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V*., 933 S.W.2d 1, 4 (Tex. 1996). *See also Doe v. Catholic Diocese of El Paso*, 2011 WL 4376591, *6 (Tex.App.--El Paso

8

Sept. 21, 2011, no pet.)(same).   As this Court has held, when insurance benefits are at issue in DTPA and Texas Insurance Code actions, the statute of limitations begins to run on the day the claim is denied.[8]   *Lozada v. Farrall & Blackwell Agency, Inc.*, 323 S.W.3d 278, 288 (Tex.App.--El Paso 2010, no pet.).

Appellants argue that the relationship between the parties is governed by the terms of the 1999 Contract and Appellees' cause of action accrued in 2002, when BSI "left the certified insurance market and obtained insurance from Transglobal Indemnity, Ltd."   Appellants claim Appellees have disguised their true cause of action, a breach of contract, through "artful pleading" by claiming the cause of action was for fraud and DTPA violations.[9]   According to Appellants, if there was a cause of action against any Appellant based on BSI's decision to become a nonsubscriber, it was a breach of contract cause of action that accrued in 2002, and therefore the statute of limitations had expired.   Appellants argue they have proven the defense of statute of limitations through their motions and the evidence adduced at trial.   Appellees assert that BSI failed to disclose that Cody Jackson did not have the benefit of insurance coverage for compensable injuries under the Texas Workers' Compensation Act until they discovered that fact in May of 2006, through due diligence.   Appellees further assert that the Appellants fraudulently concealed that no coverage existed.[10]

---

[8]  A cause of action under the DTPA and a cause for conspiracy to engage in deceptive trade practices have two-year statutes of limitations, specifically two years after the consumer discovered, or in exercise of reasonable diligence should have discovered, the false, misleading or deceptive act or practice.   TEX.BUS.&COM.CODE ANN. § 17.565 (West 2011).   Breach of contract claims are subject to a four-year statute of limitations. TEX.CIV.PRAC.&REM.CODE ANN. § 16.051 (West 2008).   A cause of action for fraud has a four-year statute of limitations.   TEX.CIV.PRAC.&REM.CODE ANN. § 16.004(a)(4)(West 2002).

[9]  Appellant cites to *Via Net v. TIG Insurance Co.*, 211 S.W.3d 310, 313 (Tex. 2006) in support of its argument, however as *Via Net* specifically dealt with a breach of contract, we find it distinguishable from to the matter before us, which also involves allegations of, *inter alia*, fraud, DTPA violations, and negligence, among the numerous claims.

[10]  Fraudulent concealment defers an action's accrual period until the plaintiff discovers or should have discovered the

A review of the record indicates that the causes of action accrued in 2006 or later. For example, Appellants paid a weekly temporary benefit to Cody Jackson for eighteen months after the accident. Transglobal performed an audit of the invoices, which was completed on July 25, 2005. The conclusion was that a lesser amount should be paid to the medical providers. However the claims at the audited amounts were not denied for another year, and were not paid. In 2006, Transglobal advised the medical providers that Starr Comprehensive Solutions had been asked to perform case management duties to assist Cody Jackson's vocational and medical case management needs. The record also reflects that the Jacksons had not filed a workers' compensation claim until Cody Jackson's accident. Delbert Jackson testified that he learned that there was no workers' compensation coverage in the summer of 2006. The record reflects that the claims for medical expenses had not been denied as of August of 2006.

Other evidence in the record reflects that the causes of action may have accrued even later. Chapman was deposed on January 15, 2008. At that deposition, Chapman testified that there was no document in existence by which BSI ever informed Jackson brothers that they had no workers' compensation insurance. Following that deposition, Chapman made a claim in Cody Jackson's name, but without his knowledge, against Great Western.

The jury charge asked the jury to determine a date by which "all" the false acts would have been discovered:

> By what date should Cody Jackson, in the exercise of reasonable diligence, have discovered all the false, misleading, unfair or deceptive acts or practices of BSI, and/or BSI Insurance, and/or Harry Sewill, and/or Richard Chapman, and/or Bart Bogus, and/or Transglobal Mortgage, and/or Transglobal Indemnity, and/or LHR Enterprises.

deceitful conduct or facts giving rise to the cause of action. It "requires evidence that the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff." *Lozada,* 323 S.W.3d at 290, *citing Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999).

Answer: Jan. 2008

Based on the forgoing and Chapman's deposition testimony as well as the claim made subsequent to his deposition, the jury could reasonably have found that the date of discovery was January of 2008.

Appellees filed their first petition on March 2, 2007. Considering the evidence in the light most favorable to the verdict, we find that Appellees' causes of action were not barred by the statute of limitations. Under a plain reading of the *Lozada* case, the DTPA and Texas Insurance Code causes of action would not accrue until the claims were denied, which, as the record reflects, did not occur until at least August of 2006. The DTPA statute of limitations depends on the discovery of the deceptive act and again, the record indicates that the discovery of this would have occurred in 2006, if not later. As the petition was filed within one year of August of 2006, the operable statutes of limitations would not serve to bar Appellees' causes of action. Appellant's first issue is overruled.

## II. Legal and Factual Insufficiency of the Evidence

Issues two through eight allege legal and factual insufficiency of the evidence as it relates to nearly all of the jury's answers in the charge. Appellants roughly group these issues into errors relating to Cody Jackson, Jackson Brothers, and the 1999 Contract. Appellants assert that the evidence was legally and factually insufficient to support the jury award of DTPA damages as to Appellee Cody Jackson (Questions One, Two, Five, and Ten); insufficient to support the finding that Appellants committed fraud as to Appellee Cody Jackson (same); insufficient to support an award for actual damages as to Appellee Cody Jackson (Question Six); insufficient to support an award for exemplary damages as to Appellee Cody Jackson (Questions Seven, Fourteen, and

11

Sixteen); insufficient to support the jury finding of fraud by BSI against Appellee Jackson Brothers (Questions Three, Eight, and Thirteen); insufficient to support the jury award for actual damages as to Appellee Jackson Brothers; and insufficient evidence finding that the breach of contract by Appellee Jackson Brothers was excused.

**Standard of Review**

When considering the legal sufficiency of the evidence supporting a finding, we must credit evidence favorable to the judgment if a reasonable fact finder could, disregard contrary evidence unless a reasonable fact finder could not, and reverse the fact finder's determination only if the evidence presented in the trial court would not enable a reasonable and fair-minded fact finder to reach the judgment under review. *City of Keller*, 168 S.W.3d at 827. We sustain legal-sufficiency challenges if the record reveals: (1) the complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a scintilla; or (4) that the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Ford Motor Co.*, 135 S.W.3d at 601.

When reviewing a challenge to the factual sufficiency of the evidence, we consider all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). Under either standard, we are mindful that the jury, as the finder of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). The jury may choose to believe one witness and disbelieve

12

another, and we must not impose our own opinion to the contrary. *City of Keller*, 168 S.W.3d at 819. *See also City of El Paso v. Parsons*, 353 S.W.3d 215, 225 (Tex.App.--El Paso 2011, no pet.)(noting same). If sufficient competent evidence of probative force exists to support the finding, it must be sustained. *In re B.R.*, 950 S.W.2d 113, 121 (Tex.App.--El Paso 1997, no pet.). Where conflicting evidence is present, the fact finder's determination on such matters is generally regarded as conclusive. *Cass v. Stephens*, 156 S.W.3d 38, 56 (Tex.App.--El Paso 2004, pet. denied).

## Error relating to Cody Jackson

Appellants first challenge the sufficiency of the DTPA award to Cody Jackson. Question One asked the jury to determine whether Appellants engaged in any unconscionable action or course of action that was a producing cause of damages to Cody Jackson. The definitions of "unconscionable" and "consumer" used in Question One of the charge were taken from the DTPA definitions in TEX.BUS.&COM.CODE ANN. § 17.45(4) and (5).[11] The jury answered "yes" as to all Appellants. Question Two asked whether Appellants had engaged in any false, misleading, unfair, or deceptive act or practice that was a producing cause of damages to Cody Jackson. Question Five asked the jury to determine what date Cody Jackson should have discovered "all" of the deceptive acts or practices through reasonable diligence. Question Ten asked whether Appellants acted "knowingly" or "intentionally," which the jury answered "yes" as to most Appellants, save BSI Insurance, Transglobal Mortgage, and LHR Enterprises.

Appellants argue there was a complete lack of evidence that Appellants ever dealt directly with Cody Jackson or made any representation to anyone with the intent that the representation be

---

[11] The DTPA defines an unconscionable action or course of actions as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX.BUS.&COM.CODE ANN. § 17.45(5).

made to Cody Jackson, and that he is not a "consumer" under the DTPA. However, this assertion is not supported. In *Kennedy v. Sale*, 689 S.W.2d 890 (Tex. 1985), the Texas Supreme Court held that an employee can qualify as a "consumer" under the DTPA. Specifically, in *Kennedy*, the Supreme Court held that an employee had standing as a "consumer" under the DTPA to sue an insurance agent who sold an insurance policy to the plaintiff's employer. The *Kennedy* court noted that "[p]rivity between the plaintiff and defendant is not a consideration in deciding the plaintiff's status as a consumer under the DTPA . . . ." *Kennedy*, 689 S.W.2d at 892-93, *citing Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex. 1983). The Supreme Court noted that construing the DTPA in a limited fashion, "only direct purchasers can be consumers," is in contravention to the DTPA's mandate of liberal construction. *Id.* at 892. Under the *Kennedy* rationale, Cody Jackson may reasonably have "acquired" benefits when he was covered by the provisions of the workers' compensation policy, and the Jacksons and Jackson Brothers could reasonably be said to have "acquired" the compensation policy benefits "by purchase," with the intent that those benefits be used by the employees of Jackson Brothers, including Cody Jackson. *Id.* The result of this would confer DTPA status as a "consumer" on Cody Jackson and therefore Appellants' legal sufficiency argument regarding this point is without merit. We now turn to Appellants' factual sufficiency challenge.

"The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *see* TEX.BUS.&COM.CODE ANN. § 17.50(a); *see also id*. §§ 17.45(5), 17.46(b). The elements of a DTPA claim are: (1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading, or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA) or

14

engaged in an unconscionable action or course of action; and (3) the DTPA laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury. *Amstadt*, 919 S.W.2d at 649; *see Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995). In our review of a DTPA claim, we must liberally construe and apply the statute to promote the underlying goals of the DTPA, which include protecting consumers against false, misleading, and deceptive business practices and unconscionable actions. *See* TEX.BUS.&COM.CODE ANN. § 17.44(a)(West 2012); *Latham v. Castillo*, 972 S.W.2d 66, 68 (Tex. 1998); *Lawrence v. Kinser*, 2011 WL 6318025, *3 (Tex.App.--Dallas Dec. 15, 2011, no pet.)(noting above).

We note that the jury indicated that Cody Jackson, through due diligence, could have discovered "all the false, misleading, unfair or deceptive acts or practices" of the Appellants in January of 2008. Appellants argue that this is contrary to the weight of all of the evidence. However, the record establishes the evidence is conflicting. Chapman made claims on behalf of Cody Jackson in 2008, while Cody Jackson discovered that the bills had not been paid in 2006. Pursuant to *Cass*, we conclude that the fact finder's determination on this matter is conclusive.

The record before the Court reflects that the Jacksons sought services from BSI and both desired and required workers' compensation coverage for Jackson Brothers and its employees, and that BSI's employees assured the Jacksons that they were covered by workers' compensation. BSI representatives visited Cody Jackson while he was in the hospital and assured him that BSI would "take care of [him]" and would pay his medical bills. BSI never informed the Texas Department of Insurance that, at the time of the accident, they did not have workers' compensation insurance, and this failure to have the required insurance was the reason that BSI made the claim against Great Western. BSI, in addition to being Cody Jackson's employer, was also owned by

15

the same persons who owned Transglobal, the purported insurance carrier who was to have provided Cody Jackson with insurance benefits. These actions are certainly indicative of Appellants making representations or misrepresentations, which Cody Jackson, a "consumer" under the DTPA, could have relied on for payment of his medical expenses. The record reflects that Cody Jackson's damages include over one million dollars in medical expenses which would have been covered by workers' compensation insurance which Appellants should have provided. The judgment in favor of the Appellees for the violations of the DTPA is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain,* 709 S.W.2d at 176.

Appellants argue that there was insufficient legal and factual evidence to support the percentages assigned by the jury in assessing responsibility among the Appellants, as set out in Question Six of the charge. Reviewing the record as a whole, including the evidence presented showing the interrelationships between the various Appellants and their business actions, and noting that the finding of the jury is entitled to great deference, *see Romero v. CMA, Inc.*, 808 S.W.2d 157, 159 (Tex.App.--El Paso 1991, pet. denied)(additionally noting that amount awarded for future damages is largely left to discretion of jury), we hold that the jury's finding in assessing responsibility among Appellants is not "manifestly unjust."

Appellants argue that there is no evidence to support the jury's answers in Question Ten regarding whether Appellants acted "knowingly" or "intentionally." Again, deferring to the jury in resolving conflicting evidence, we hold that the jury's findings on whether Appellants' actions were "knowing" or "intentional" are supported by the record.

Appellants assert that there is no legal or factual evidence to support a finding of fraud.

16

Fraud occurs when: (1) a party makes a material misrepresentation; (2) with knowledge of falsity or made recklessly without any knowledge of its truth and as a positive assertion; (3) made with intent that it be relied upon by the other party; (4) that the party actually relied upon it; and (5) that the party suffer injury. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983); *Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 185 (Tex. 1977); *State National Bank of El Paso v. Farah Manufacturing Co, Inc.*, 678 S.W.2d 661, 681 (Tex.App.--El Paso 1984, writ dism'd by agr.); *Beneficial Personnel Services of Texas, Inc. v. Rey*, 927 S.W.2d 157, 167 (Tex.App.--El Paso 1996)(noting same), *judgment vacated pursuant to settlement*, 938 S.W.2d 717 (Tex. 1997). The trial court likewise properly instructed the jury that a misrepresentation means: (1) a false statement of fact; (2) a promise of future performance made with intent not to perform; (3) a statement of opinion based on a false statement of fact; or (4) an expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter of the opinion. *Trenholm*, 646 S.W.2d at 930; *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434-35 (Tex. 1986); *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 723 (Tex. 1990); *Beneficial Personnel Services, Inc.*, 927 S.W.2d at 167. The trial court also instructed that fraud can be established through nondisclosure or omission, which may occur: (1) when a defendant conceals or fails to disclose a material fact within his knowledge; (2) the defendant knows the plaintiff is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the defendant intends to induce the plaintiff to take some action by concealing or failing to disclose the fact; and (4) the plaintiff suffers injury as a result of acting without knowledge of the undisclosed fact. *Holland v. Thompson*, 338 S.W.3d 586, 597 (Tex.App.--El Paso 2010, pet. denied).

Here, the jury found that all Appellants committed fraud in relation to Cody Jackson.

17

Appellants again argue that because no representation was made directly to Cody Jackson, that the jury's finding is legally insufficient.   We disagree.   There is support for third-party claims for fraud.   *See Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.,* 51 S.W.3d 573, 578 (Tex. 2001) (holding that intent-to-induce-reliance element of a fraud does not depend on privity, and may be established by a "reason to expect" reliance); *Burroughs v. APS Intern., Ltd.*, 93 S.W.3d 155, 162 (Tex.App.--Houston [14th Dist.] 2002, pet. denied)("is sufficient to show that the misrepresentation was intended or expected to reach the third person and was made with the intent or expectation the third person would rely on it.").   Appellants' legal sufficiency argument as to the fraud claim is overruled.

Turning to Appellants' factual insufficiency claim, we hold that the record is sufficient to support a finding that Appellants committed fraud through misrepresentation which was expected to reach third parties, namely employees of Jackson Brothers such as Cody Jackson.   Specifically, the misrepresentation being that BSI maintained workers' compensation insurance when in fact it did not, that Jackson Brothers and its employees were ignorant of that fact, that employees of Jackson Brothers could rely on being covered by that insurance and would act in accordance with the belief that they were covered, and that Cody Jackson suffered an injury as a result of acting without this knowledge.   Viewing the record as a whole, and deferring to the jury and its role in weighing the evidence presented, we conclude that the record supports the factual sufficiency of the jury finding.

The jury, in Question Seven, was asked to determine the amounts that would compensate Cody Jackson for his damages that resulted from the jury finding Appellants violated the DTPA and committing fraud.   The jury found $1,016,000 for "reasonable and necessary medical costs"

18

for Cody Jackson's previous injuries; $5,000 for future injuries; and $1,161,000 for lifetime income benefits, for a total of $2,182,000.   Appellants assert that the evidence was legally and factually insufficient to support the award these damages to Cody Jackson.   We disagree.

The record reflects that medical bills indicating the amounts of Cody Jackson's medical expenses were introduced and testified to, including following the audit performed by Appellants. The record reflects that the jury, relying on the testimony of Dr. Griswold, determined that $5,000 was an appropriate nominal amount for future medical expenses.   The record also reflects that lifetime income benefits are payable for compensable injuries under the Texas Workers' Compensation Act in the event an employee suffers third degree burns on more than 40 percent of his body, payable in the amount of 75 percent of the employee's average weekly wage, for life. Cody Jackson suffered second and third-degree burns over 65-70 percent of his body.   The record indicated that Cody Jackson was earning approximately $3,000 monthly.   We find that the jury's award of damages was not contrary to the weight and preponderance of the evidence and is supported by the record.

Appellants next argue that that there is not sufficient legal or factual evidence to support the jury finding that Appellants Sewill, Chapman, and Bogus were each part of a conspiracy which damaged Cody Jackson.

A civil conspiracy is comprised of the following elements:   (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.   *Operation Rescue-National v. Planned Parenthood of Houston and Southeast Texas, Inc.*, 975 S.W.2d 546, 553 (Tex. 1998). Appellants again argue that conspiracy cannot be proven, in part, because of a lack of privity with

19

Cody Jackson.

The record reflects, *inter alia*, that; Chapman is a 25 percent owner of BSI, a 33 percent owner of LHR Incorporated, and is on the board of Transglobal; Sewill is the president of BSI and a 33 percent owner of LHR; Bogus is the owner of BSI Insurance Services, Inc.; that Bogus's address is the same as BSI's address; Bogus issued the certificates of liability for BSI and its customers, representing that the customers had workers' compensation insurance coverage; because neither Transglobal or BSI is authorized to conduct insurance business operations in Texas that Chapman, Sewill, and Miller would, annually, drive across the border into Louisiana to set up insurance policies for use in Texas by BSI; Transglobal is not really an insurance company capable of paying the claim of Cody Jackson; BSI made representations to the Jacksons and to TTUHMSC and UMHC that the medical bills would be paid through BSI under the Texas Workers' Compensation Act; and the representations were made to Jackson Brothers through (1) oral promises, (2) certificates of insurance, (3) BSI contracts, (4) the "Employer's First Report of Injury" prepared by BSI for Cody Jackson, and (5) letters to medical providers and Cody Jackson. The record is replete with evidence sufficient for a jury to determine that the elements of civil conspiracy were established.

Appellants argue that the evidence was legally and factually insufficient to support the jury awards of additional or exemplary damages in favor of Cody Jackson.

The Civil Practice and Remedies Code requires a plaintiff seeking recovery of exemplary damages resulting from fraud to establish the elements of fraud by clear and convincing evidence. TEX.CIV.PRAC.&REM.CODE ANN. § 41.003(a)(1)(West Supp. 2011). "Clear and convincing" requires "proof that will produce in the mind of the trier of fact a firm belief or

20

conviction as to the truth of the allegations sought to be established."
TEX.CIV.PRAC.&REM.CODE ANN. § 41.001(2) (West 2008). The finder of fact must consider the nature of the wrong, the character of the conduct involved, the degree of culpability of the defendant, the situation and sensibilities of the parties involved, the extent to which the defendant's conduct offended a public sense of justice and propriety, and the net worth of the defendant. *Id.* § 41.011(a). *See also Fazio v. Cypress/GR Houston I, L.P.* --- S.W.3d ----, 2012 WL 159929, *20 (Tex.App.--Houston [1st Dist.] Jan. 19, 2012, no pet.)(citing same).

Under the DTPA, "additional damages" are allowed, up to potentially three times the amount of actual damages,[12] if the claimant can show that the bad actor committed the violations of the DTPA "knowingly" or "intentionally." *See, e.g. Texas Mut. Ins. Co. v. Sara Care Child Care Center, Inc.,* 324 S.W.3d 305, 318 *(*Tex.App.--El Paso 2010, pet. denied).

In answering Question Fifteen the jury found that the fraud was supported by clear and convincing evidence. The jury assessed additional damages against BSI, Sewill, Chapman, and Transglobal due to their conduct being knowing or intentional as defined in the DTPA (Question Fourteen), and awarded exemplary damages against BSI, Sewill, Chapman, and Transglobal for the fraud (Question Sixteen).

The evidence outlined above was sufficient for the jury to conclude that Appellants knowingly or intentionally created a scheme where they were purporting to offer workers' compensation insurance and give assurances that, in the event of an on-the-job injury, parties like Appellees would be covered by that insurance and would have access to the appropriate benefits thereunder. Moreover, the evidence was sufficient such that the jury could have concluded that Appellants knowingly or intentionally misrepresented the terms and conditions of the contracts.

---

[12] *See* TEX.BUS.&COM.CODE ANN. §17.50(b)(1)(West 2011).

21

*See St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co., Inc.*, 974 S.W.2d 51, 53-4 (Tex. 1998) (knowledge can be inferred when objective manifestations indicate that the person acted with actual awareness).   We conclude that there is factually sufficient evidence to support the jury's award of exemplary damages for fraud, and for additional damages under the DTPA.

The exemplary damages awarded in Question Sixteen do not exceed the limits set out in TEX.CIV.PRAC.&REM.CODE ANN. § 41.008(b).   Therefore there is no violation of the statutory or constitutional restraints on exemplary damages.   Moreover, the evidence noted above is sufficient to support the jury's finding that there was clear and convincing evidence of fraud and that the nature of the wrong, the degree of culpability of the Appellants, the situations and sensibilities of the parties, the extent to which Appellants' conduct offended a public sense of justice and propriety, and Appellants' net worth all justified the imposition of exemplary damages.

Upon review of the entire record, we cannot conclude that the jury's determinations in this case were so against the "great weight and preponderance of the evidence" as to be clearly wrong and unjust. The evidence was clear and convincing and sufficient to justify a jury finding of fraud. The damages assessed, including the additional DTPA and exemplary damages, were also supported.   We overrule Appellants' second, third, fourth, and fifth issues.

**Errors relating to Jackson Brothers**

In their sixth issue, Appellants contend that there was no legal or factual evidence sufficient to support a finding that BSI committed fraud against Jackson Brothers, while their seventh issue asserts that there is legally and factually insufficient evidence to support an award of damages to Appellee Jackson Brothers.

Jury Question Three asked the jury to determine which Appellants, if any, committed fraud

22

against Jackson Brothers. The jury answered "yes" as to Appellant BSI only. Question Eight asked how much money would fairly and reasonably compensate Jackson Brothers for the conduct of Appellant BSI. The jury answered $47,000. Question Eight also advised that the jury could consider disgorgement of fees.

As noted above, fraud occurs when: (1) a party makes a material misrepresentation; (2) with knowledge of falsity or made recklessly without any knowledge of its truth and as a positive assertion; (3) made with intent that it be relied upon by the other party; (4) that the party actually relied upon it; and (5) that the party suffered injury. *Beneficial Personnel Services, Inc.*, 927 S.W.2d at 167. The trial court properly instructed the jury that a misrepresentation means: (1) a false statement of fact; (2) a promise of future performance made with intent not to perform; (3) a statement of opinion based on a false statement of fact; or (4) an expression of opinion that is false, made by one claiming or implying to have special knowledge of the subject matter of the opinion. *Id.* The trial court also instructed that fraud can be established through nondisclosure or omission, which may occur: (1) when a defendant conceals or fails to disclose a material fact within his knowledge; (2) the defendant knows the plaintiff is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the defendant intends to induce the plaintiff to take some action by concealing or failing to disclose the fact; and (4) the plaintiff suffers injury as a result of acting without knowledge of the undisclosed fact. *Holland*, 338 S.W.3d at 597.

The record before this Court, in addition to the evidence previously noted, reflects that the Jacksons sought services from BSI and both desired and required workers' compensation coverage for Jackson Brothers and its employees. BSI's employees assured the Jacksons that they were covered by workers' compensation. BSI also advised the Jacksons that they could pay

23

themselves bonuses while BSI would pay minimum wage. The Jacksons testified that if BSI had informed them that the workers'' compensation insurance was not procured from a licensed Texas insurance salesman, they would not have used BSI's services. The record is sufficient to support a finding that Appellants committed fraud through misrepresentation towards Jackson Brothers. Specifically, the misrepresentations being that: BSI maintained workers' compensation insurance for Jackson Brothers when in fact it did not; Jackson Brothers and its employees were ignorant of that fact; Jackson Brothers could rely on being covered by that insurance and acted in accordance with the belief that they were covered; and that Jackson Brothers suffered an injury as a result of acting without this knowledge. Viewing the record as a whole, and deferring to the jury and its role in weighing the evidence presented to it, we find the record supports the factual sufficiency of the jury finding. The judgment in favor of the Appellees for fraud is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain,* 709 S.W.2d at 176.

Appellees have tendered a voluntary remittitur in the amount of $4,000 to conform the judgment to the record, which indicates that $43,000 was the amount paid to BSI by Jackson Brothers for benefit and management fees for the years 2000, 2003, 2004, 2005, and 2006. We accept the remittitur proposed by the Appellees as being in conformity with the record. The evidence is sufficient to support the jury's finding that, as damages for the fraud committed by BSI, an amount equal to the amount of the fees paid to BSI by Jackson Brothers, $43,000, is an appropriate award, and is not excessive. Appellants' sixth and seventh issues are overruled.

### Error relating to excusing contract

In their eighth issue, Appellants argue that the evidence was legally insufficient to support

24

the finding that the Jackson Brothers' breach of contract was excused. Jury Question Thirteen asked "Was the failure to comply by Jackson Brothers Hot Oil Service excused?" The question defined "waiver" as "an intentional surrender of a known right or intentional conduct inconsistent with claiming the right." The question also allowed for excusal of failure to comply if all of the following occurred: (1) BSI (a) by words or conduct made a false representation or concealed material facts, (b) with knowledge of the facts or with knowledge or information that would lead a reasonable person to discover the facts, and (c) with the intention that Jackson Brothers would rely on the false representation or concealment in acting or deciding not to act; and (2) Jackson Brothers Hot Oil Service (a) did not know and had no means of knowing the real facts, and (b) relied to its detriment on the false representation or concealment of material facts.

Appellants argue that the "existence of a valid written contract" bars Appellees' claims and rendered this question immaterial, that there is no evidence that BSI ever waived its rights under the contract by either surrendering any rights or "acting inconsistently with claiming any rights under the contract." We disagree. As supported by the record, and outlined above, the jury found that Appellants committed fraud against Jackson Brothers. Crediting evidence favorable to the judgment, where the jury, as a reasonable fact finder could and disregarding contrary evidence, and in light of the fact that the elements of fraud were met, that there is sufficient evidence to support the jury finding an excuse for Jackson Brothers failure to comply with the contract. *City of Keller*, 168 S.W.3d at 827. Appellants' eighth issue is overruled.

**Failing to construe the 1999 Contract because it was unambiguous**

Appellants final issues are a series of arguments asserting that the court committed reversible errors of law which caused the rendition of an improper judgment. We review

25

determinations of legal questions on a *de novo* basis. *General Motors Acceptance Corp./Crenshaw, Dupree & Milam, L.L.P. v. Crenshaw, Dupree & Milam, L.L.P./General Motors Acceptance Corp.*, 986 S.W.2d 632, 636 (Tex.App.--El Paso 1998, pet. denied), *citing In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994). In true *de novo* appellate review, the appellate court exercises its own judgment and redetermines each issue of fact and law, giving no deference to the trial court's decisions. *Las Palmas Medical Center v. Moore,* 349 S.W.3d 57, 66 (Tex.App.--El Paso 2010, pet. denied).

Appellants ninth issue asserts that the trial court erred by failing to construe the 1999 Contract as unambiguous and that the trial court should have given effect to the intentions of the contracting parties according to the rules and principles of contract construction. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). If this case turned only on the language of the 1999 Contract, Appellants might be correct. However, their argument is predicated on the assertion that this case is merely a breach of contract case. Appellants disregard the pleadings which allege, in addition to the breach of contract, conspiracy, fraud, DTPA violations, violations of the Texas Insurance Code, and negligence, among other claims. While the action does relate to the terms of the 1999 Contact, the scope of the matter placed before the court and the fact finder was not limited to that alone. *Weitzel v. Barnes*, 691 S.W.2d 598, 599-600 (Tex. 1985) is a DTPA case where a written contract was a part of the underlying DTPA action. In *Weitzel* the Texas Supreme Court noted that "[t]he oral representations, which were made both before and after the execution of the agreement, constitute the basis of this cause of action, so traditional contractual notions do not apply." *Id*. at 600. This reasoning is applicable here. Appellees alleged DTPA violations, in addition to the other claims. We find no error by the trial court in failing to construe the 1999

26

Contract. *See Munawar v. Cadle Co.*, 2 S.W.3d 12, 19 (Tex.App.--Corpus Christi 1999, pet.

denied)(finding that because allegations of conduct which amounted to more than mere

non-performance under a contract result in court concluding that cause of action under DTPA

involves more than mere contact principles). Appellants' ninth issue is overruled.

**Error in granting Appellee's motion to introduce parol evidence**

In their tenth issue, Appellants argue that the trial court erred in granting the Appellee's

motion to introduce parol evidence. Appellants argue that due to the integration clauses in the

1999 Contract, the law prohibits review of extrinsic evidence in relation to the contract. Again,

this argument is predicated on Appellants' view of the case as a breach of contract matter only, and

ignores the remaining claims.

Again, we turn to *Weitzel*, and follow the Supreme Court's holding that where claims are

based on the DTPA, the parol evidence rule is not applicable and therefore evidence of oral

representations is admissible. *Weitzel*, 691 S.W.2d at 599-600 (rejecting applicability of

traditional contractual notions, including parol evidence rule, to DTPA claims based on oral

misrepresentations made before and after execution of agreement);[13] *see also Young v. Neatherlin*,

---

[13] We note the comments made by the Dallas court of appeals regarding the *Weitzel* holding:

> In other words, the Supreme Court recognized that contractual liability and liability under
> the DTPA derive from two different sources. Contractual liability turns solely on the agreement of
> the parties whereas liability under the DTPA springs from the statute. As a general proposition,
> liability under the DTPA is neither increased nor diminished by the presence of a formal written
> contract covering the identical subject matter.
> Unlike contractual liability, resulting from the voluntary agreement of the parties, liability
> for false, misleading and deceptive acts is provided by the legislature for the breach of a duty
> imposed by it. These duties cannot be altered by the agreement of the parties. To apply the parol
> evidence rule in DTPA cases would frustrate the legislature's purpose in passing the statute without
> furthering the objectives of the parol evidence rule.

*Honeywell, Inc. v. Imperial Condominium Ass'n, Inc*., 716 S.W.2d 75, 78 (Tex.App.--Dallas 1986, no pet.)[Citations omitted].

102 S.W.3d 415, 422 (Tex.App.--Houston [14th Dist.] 2003, no pet.)(same); *Downs v. Seaton*, 864 S.W.2d 553, 555 (Tex.App.--Tyler 1993, no pet.)(same); *Mear v. West Loop Automotive, Ltd.*, 2005 WL 543987, *1-2 (Tex.App.--San Antonio 2005, no pet.)(noting same).

Appellants' tenth point of error is overruled.

**Error in entering final judgment because Appellees failed to properly elect remedies**

Appellant's final issue argues that the trial court erred by entering the proposed final judgment offered by Appellees because Appellees failed to properly elect their remedies. Appellants argue that Appellees impermissibly sought to pick and choose alternate remedies based on alternate theories of recovery among the joint defendants. Appellants objected on the basis of the failure to elect remedies at the trial court, asserting that Appellants were attempting an impermissible double or multiple recovery in violation of the one-satisfaction rule.

For breach of contract, a party could recover economic damages and attorney's fees, but not mental anguish or exemplary damages. For fraud, a party could recover economic damages, mental anguish, and exemplary damages, but not attorney's fees. For a DTPA violation, a party could recover economic damages, mental anguish, and attorney's fees, but no additional damages beyond three times the economic damages, unless an act was committed intentionally. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006).

The trial court entered the final judgment on December 22, 2010 against Defendants Sewill, Chapman, Bogus, BSI Insurance Services, Transglobal Mortgage, and LHR, jointly and severally in favor of Cody Jackson, predicated on the jury's findings of fraud and conspiracy, in the amount of $1,534,902.[14] The court further ordered that "out of and as a part of the $1,534,902.00 actual damages" that certain named defendants were individually and separately

---

[14] This amount reflects a $635,000 settlement credit allowed for settlement paid by Great Western.

liable to Cody Jackson for the following amounts predicated on the jury's answers to the DTPA questions: BSI Insurance Services for $537,215.70 (35 percent of the total of the actual damages, set out in Question Six); Tranglobal Indemnity for $767,451 (50 percent of the actual damages), with satisfaction of these amounts reducing the overall actual damage amount owed. The judgment awarded $700,000 in additional damages against BSI for the DTPA claims, $37,500 in exemplary damages against Sewill relating to the fraud cause of action, $1,000,000 against Transglobal as additional DTPA damages, and $37,500 in exemplary damages against Chapman relating to the fraud cause of action. The judgment awarded Jackson Brothers $47,000, such sum being the economic damages found by the jury for the fraud committed by BSI.

Appellees, in their Motion to Enter Judgment, argue, without reference to authority, that there is an "inherent inconsistency with the proportionate responsibility application of DTPA causes of action to the consumer protection purposes of the statute," that the applicable law is "inherently unfair and/or unconstitutional," and that it "improperly requires [Appellees] to make an election concerning what otherwise should be joint and several liability" as to Appellants. Appellees argue that the judgment for liability for DTPA damages and additional recovery against one Appellant, and a different ground for recovery against separate Appellants for their commission of fraud and exemplary damages does not violate the rules for election of remedy, provided there is no double recovery.

The "one satisfaction" rule is "the longstanding proposition that a plaintiff should not be compensated twice for the same injury." *CTTI Priesmeyer, Inc. v. K & O Ltd. P'ship*, 164 S.W.3d 675, 683 (Tex.App.--Austin 2005, no pet.), *citing Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991). "When a party tries a case on alternative theories of recovery and a jury returns

favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief." *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co*., 747 S.W.2d 785, 787 (Tex. 1988). The DTPA specifically limits recoveries. *See* TEX.BUS.& COM.CODE ANN. § 17.43 (providing that "no recovery shall be permitted under both this subchapter and another law of both damages and penalties for the same act or practice."). *See also Gunn Infiniti, Inc. v. O'Byrne*, 996 S.W.2d 854, 862 (Tex. 1999)(holding plaintiff must elect recovery under either DTPA or fraud after remand); *Holland v. Hayden*, 901 S.W.2d 763, 767 n.8 (Tex.App.--Houston [14th Dist.] 1995, pet. denied)(holding that when defendant's negligent act and DTPA violation are both the proximate cause of the same damages, an award of both exemplary damages and statutory treble DTPA damages amounts to a double recovery of punitive damages).

In the instant case the judgment combines, under a single judgment amount of $1,534,902, recoveries for both fraud and DTPA violations, as well as awarding both exemplary damages and additional DTPA damages. The jury found that Appellants had committed deceptive acts knowingly or intentionally and found clear and convincing evidence that Appellants had committed fraud towards Appellee Cody Jackson. Cody Jackson is entitled under the verdict to exemplary damages for either fraud or violation of the DTPA. *See Tony Gullo Motors I, L.P.,* 212 S.W.3d at 306-07.

We will reform the judgment to reflect that the entire $1,534,902 is for DTPA violations committed by Appellants Sewill, Chapman, BSI, Bogus, Transglobal, Transglobal Indemnity, and LHR, who are jointly and severally liable for the DTPA violations that were the producing cause of injury to Cody Jackson, as supported by the jury response to question one and question two, and

as set out in the final judgment[15]   The DTPA violations were committed knowingly or intentionally and as a result Appellee Cody Jackson is entitled to additional damages under the DTPA against Appellants BSI, Sewill, Chapman, Bogus and Transglobal, as set out in question ten.   The percentages of responsibility set out in question six are supported and unmodified.   The award of additional damages in the amount of $700,000 assessed against BSI is allowed as additional DTPA damages, the award of additional damages in the amount of $1,000,000 assessed against Transglobal is allowed as additional DTPA damages, and the individual awards of $37,500 of additional damages against Chapman and Sewill are reformed from exemplary damages for fraud to additional damages under the DTPA.[16]   The final judgment did not award additional damages against Bogus and that remains unchanged.

The jury found that Appellant BSI committed fraud against Jackson Brothers.   The judgment of $47,000 against BSI for fraud against Appellee Jackson Brothers, a separate plaintiff, is supported.   Appellants' objection as to this part of the judgment is overruled.

### CONCLUSION

The trial court did not err in denying Appellants' motion for judgment notwithstanding the verdict based on affirmative defenses.   The evidence is both legally and factually sufficient to support the jury's award of Deceptive Trade Practices Act damages, actual damages, and fraud and exemplary damages as to Appellee Cody Jackson.   There is both legal and factual evidence sufficient to support the jury's finding of fraud by BSI against Appellee Jackson Brothers and sufficient evidence to support the jury award for actual damages as to Appellee Jackson Brothers.

---

[15] The judgment provides for specific liability for BSI and Transglobal Indemnity, which are not altered by this opinion.

[16] In light of the forgoing, Appellants' Motion to Correct Judgment has been rendered moot.

31

The evidence is both legally and factually sufficient to support the jury's finding that the Jackson Brothers' breach of contract was excused. The trial court did not err in failing to construe the 1999 Contract because it was unambiguous, nor did the trial court err in granting Appellees' motion to introduce parol evidence. We reform the final judgment to reflect the voluntary remittitur and to reflect recovery and additional damages based on violations of the DTPA, and affirm the judgment of the trial court as reformed.


July 5, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.